Good morning, Your Honors. May it please the Court, Ira Kasdan, on behalf of Appellants, I will refer to the Appellants in this oral argument as Siena. Siena was not a moving party before the District Court below, and as a consequence, it did not have to prove anything in order to overcome the motion for summary judgment that the Mayor and Council had filed. All that it had to do was demonstrate any one of the following three scenarios. Number one, that a reasonable trier of fact would be able to find for Siena at the end of the day at trial, given the evidence that was before the Court at this juncture. And we submit that with respect to our substantive due process claim, we certainly have demonstrated that a reasonable trier of fact would be able to find for us at the end of the day based on the MLC factors. Our decisions have resisted sending these zoning land use claims before reasonable triers of fact, because it just gives, all it does is, it's a mechanism in this particular area of law, for completely taking all the action out of the state system and local zoning boards and local city councils and putting all these land use decisions right in the lap of the federal court. And our cases have been uniformly resisting that particular course of action. And let me ask you here, because we need to start at step one in this. We have a precedent called a helping hand that requires, before you can get to a due process claim, there has to be a denial of something. Did you even apply for a building permit? I think that was a reversible error that Judge Titus committed when he said that we had to apply for a building permit. And the reason for that... You didn't have a building permit. We did not. We had final site plan approval. And it is our contention that as a consequence, we have a protectable... Did you apply for a building permit? No, we did not. And the reason for that is because it would have been totally futile to do that. Futility is not what we're going to end. We have a precedent out there, a helping hand. And it says that a property interest has to be established by state law, in this case Maryland law. And if you don't have a property interest, there can't be a denial of a property right. And then the Maryland courts have been clear, and our court has been clear, that to have a property interest, you have to have a building permit, and some kind of construction has to have begun. Now that's Maryland law. And Roth says Maryland law, the Supreme Court says that Maryland law controls here. Respectfully, Your Honor, I think that Judge Titus, and now Your Honor perhaps, is conflating the notion of a vested right with a property interest. And there clearly is a difference between the two. We didn't have, and we don't argue that we have, a vested right. A helping hand talks about a property interest. Correct. And the test for that is in the Gardner case. And in Gardner, the test is whether or not the issuance of a building permit would be virtually assured. And we believe that as a matter of law, in this instance, a building permit would be virtually assured based on the court's decision of the Court of Appeals in Maryland in Evans. Wasn't it a fact that you had some 14 conditions that Seattle still had to meet before you really would ever even get a building permit? The answer to that, Your Honor, is that we had final site plan approval. And what that does, just to answer your question, Your Honor, it creates a roadmap. It creates a checklist. And all that we had to do was check off those boxes in order to be able to get the building permit. No. Didn't they find below that there are approximately 14 different conditions that you still had to meet, you still did not have a final building permit? And we are arguing, Your Honor, that at worst, that is a material fact that's genuinely in dispute. That question was right on point. Our law is clear that you have to have a property interest, you have to have a building permit under Maryland law, and construction has to begin. Now you say, it would have been futile. But my colleagues, to apply, we're going to just have people bypass the whole state and local land use process and come into court. Well, I don't have a building permit. It would have been futile. Why even try it? But as Judge Jackson's question points out, to get that building permit, you had to go through certain steps, which Maryland law requires. And you just said, no, we're not going to do that. It's almost like you're treating state land use processes with contempt when you're saying we're not even going to apply for a building permit. You don't have to apply for it, but then you come into court and say we've been denied due process when you don't have the property right. We had no opportunity, Your Honor, to apply for that building permit. Because after we received final site plan approval, the ordinance was amended. And by virtue of that amendment, we were barred from getting a building permit. You could have applied for a building permit before you filed your complaint in federal court. The plaintiff, the timing of that was up to you. You weren't forced to. The plaintiff chooses the form and he chooses the time. Those are advantages that the plaintiff has in every lawsuit. And I just wonder exactly what kind of precedent we set. Well, we can't overrule a helping hand to begin with. And we can't overrule the Maryland state courts in addition. But here we're taking this one area of law that traditionally, under our federal system, has been at the core of state and local concern. And that is land use. And what you want us to do is just constitutionalize the whole thing through substantive due process and equal protection. And our cases uniformly stand against any such proposition. To respond, Your Honor, a number of things. First of all, this court's precedent in Beacon and in Cleveland make it perfectly clear that even without applying for a permit, that one can bring a facial claim of substantive due process, which we have over here. And if everybody knows what the nature of the development is, and that's what Beacon talks about, then you have an applied attack as well. And that's what we have over here. Well, let's talk a bit about substantive due process. My colleague to my right over here, Judge Niemeyer, has written the leading opinion in this field at Sylvia Development Corporation. And it's extensively discussed in all of the cases. And you didn't even cite it. You made no attempt to even address it. And it's the leading case in indicating that land use processes are presumptively in the state system. And that substantive due process claims are not going to be used to upend those unless they are arbitrary and capricious to the point of outrageousness. That case was there. And it wasn't even mentioned. The reason, Your Honor, it was not mentioned is because we are relying on this court's precedent in MLC Automotive, which was decided after Sylvia and which cites Sylvia and sets forth the three-pronged test that we meet over here. The three-pronged test to determine whether or not there's a due process substantive violation claim is based on whether or not there's a regularity in process, whether there's targeting, and whether there's a deviation from normal practice. And we meet all three of those factors. You have to show that something, in order to create substantive due process rights, you have to show that something is arbitrary and capricious to the point of outrageousness. And what is arbitrary and capricious about a local city council, and you may disagree, saying, with respect to an elementary school, that they do not, as a general matter, want a warehouse within 250 feet, which I guess is less than on the distance of a football field, next to an elementary school, and the problems that that can bring along. Now, you may disagree with that, fine. That's what the whole land use fight and the political fight in locality after locality is all about. But it surely couldn't be arbitrary and capricious for a city council to seek to protect an elementary school in this way. Your Honor, a few things about that. First of all, they targeted and they singled out self-storage facilities. They did not say that warehouses could not be built within the 250 feet of the property line. That by itself is discriminatory on its face, and there is no rational basis to distinguish between warehouses and self-storage facilities. And we argue that based on the MLC factors, one, there was an irregularity in the process over here, that there was no comprehensive plan, and that's our count seven in the complaint. It is a conditional use for all, not just some, but for all properties zoned light industrial or heavy industrial or mixed use or whatsoever. It was not an adjudicative determination. There is not one public school other than Maryville that is within 250 feet of the four zones that are covered by this zoning text amendment that's at issue in this case. There's no question that CN was targeted, which is the second factor in MLC. But that's not impermissible unless there's no rational relationship between that act and the zoning commission or council's ability to implement zoning regulations with respect to safety. There has to be a lack of rationality there with respect to their ability to promulgate these regulations, even if it happens to target a certain group of warehouses or storage facilities. Rational basis to test, first of all, is not a rubber stamp. But beyond that, in zoning cases, the test is whether or not there's a substantial relationship between legitimate land use concerns and the zoning text amendment. Yes, the test is whether it's arbitrary and capricious to the point of outrageousness under Sylvia development, which you never bothered to discuss. This MLC automotive is based on a helping hand and based on Sylvia. And I would say Sylvia went to trial. We would deny completely any discovery in this case. And we believe and we have an unrebutted affidavit from our expert who has testified that there would be no discretion whatsoever, so long as we met those conditions for the issuance of the building permit. But the reason that you didn't get discovery and everything is because it faltered at a threshold issue, which is that you didn't have a property interest. You didn't have a building permit. There was no construction that had begun. That's the test, Your Honor, for vested right. It's not the same. Vested right and property interest are not the same. Vested right can be and is a property interest. But one can have a property interest without having a vested right. What a vested right does, it gives rise to a takings claim, which we're not asking for. It gives rise to an estoppel claim, which we don't have here either. What a vested right does is it allows- This interpretation of vested right is nothing more than an end run around the whole law of property interest as it has been established in the Roth case by the Supreme Court. And a vested right is just another way of saying property interest. Respectfully, Your Honor, we would disagree. There's no case that says that. There's a difference between a vested right and- It's assumed. There has to be a basis for that, Your Honor. The Maryland courts talk about vested rights. You have a vested right when you acquire property. That's what gives you the vested right. You can have a property- It's when you acquire the property. You could have a property interest, respectfully, Your Honor, without having a vested right. And that's what our claim is here. The test is the Gardner test. Is there no discretion that the city would have in denying the building permit? And we have the affidavit. And at worst, it's a genuine issue of material fact that's in dispute. And we should have been able to go forward in discovery in this case. All these other cases, Sylvia and Helping Hand, went through discovery. Some of them even went to trial. We were denied everything at this point, and it's particularly inappropriate based on this court's precedent. That's right. Because the farther you go into it and the more discovery you do and the more trials you do, you essentially constitute federal court as a planning commission and a board of zoning appeals and the rest. The whole idea of proceeding deeper and deeper into a case is to have the federal courts become de facto city councils and planning commissions and boards of zoning appeals. Now, I don't understand when the state has set up a process to protect its time-honored sovereign interests in land use decisions. And the process is there, and the process has a number of steps, a great many steps, that afford administrative review at the outset. And after that, there's an elected body that makes a decision. And after that, there are appeals to the courts and opportunities for judicial review. So you get all kinds of review and all kinds of different review. And what bothers me of these attempts to circumvent a very careful state process. In all of our states that have been set up to resolve questions that are of interest to the local community, nobody has a greater interest in this than the parents who are sending their children to these schools and those school children whose safety is important. The paramount interest here is not a federal constitutional interest. It is an interest of the parents and children and teachers and others who are in that school. Your Honor, we did not file in federal court. We filed in state court. They're the ones that removed it to federal court. So Your Honor can't say that we're trying to circumvent the state process because they brought it before the federal court here. Well, why ever we hear it doesn't belong. I think my time is up. No, it's not up if you want to get to the last word. Your Honor, we submit that the concerns of traffic and safety that were brought up over here were pretextual in nature. We have evidence to that effect. We have e-mails where the activists admit that a self-storage unit decreases, if it's a modern facility such as this one would be, decreases crime, decreases traffic. You have the planning commission that found that. Why isn't weighing that evidence the very thing for which local city councils are elected? I mean, the weighing efforts about traffic and safety and everything, that's what city councils do. If Your Honor is correct, and the MLC automotive case means nothing at all, there's a three-pronged test. I believe Judge Niemeyer is part of the panel over there. And the three-part test is whether or not there's a regularity in process, whether there's targeting, and whether there's a deviation from normal practice. And that will determine whether or not the ordinance is arbitrary and capricious or not. We meet that test. We should be able to go forward to be able to prove that at trial. And certainly we should be able to get discovery in advance to rectify material facts that are in dispute. At worst, the question of whether or not there is discretion to deny the building permit is a material fact that's in dispute. We have an unrebutted affidavit to that effect. There's no testimony that would contradict that. And as a consequence, we would urge this Court to reverse and remand the case. Thank you, Your Honor. Thank you. May it please the Court, Kevin Karpinski on behalf of the appellees. Your Honor, the trial court correctly dismissed the substantive due process claim as Judge Wilkinson has already stated. This is dictated by state law, and state law in Maryland has been clear for many, many years that you need to have a building permit and have commenced construction. Rockville Fuel and Feed is merely a summary of what has been the law in Maryland for, you know, 100 years. There's no question in the world there was no building permit. There was no substantial construction. There was no application for a building permit. No application, Your Honor. And the reality is, as Judge Jackson indicated, to say that this was final site plan approval is, with all due respect, it's not really even believable. I mean, the reality is the site plan approval was conditioned upon approval of a site plan, approval of architectural plans, landscaping plans. I mean, a bunch of things that clearly are not ministerial in nature. And while my colleague says, well, we didn't submit an affidavit, I believe it's for the court to determine when something is ministerial and discretionary. These things that are listed that were required to be done are clearly at the discretion of the city. There was no building permit, no property right. And so the substantive due process claim fails for that basis. And as Your Honor has indicated, in addition to having the property right, you'd have to have arbitrary, capricious, and egregious behavior. And I would respect that. Under the substantive due process clause. Yes, Your Honor. And this happens every day. This is what elected officials are elected to do. They hear complaints from their citizens. They hear concerns from their constituents. And they decide whether it's appropriate or not appropriate to enact legislation. So there's no property right. There's no egregious conduct that would justify a substantive due process claim. And I think it stops. I mean, the question is whether you can get to the arbitrariness of not wanting a warehouse right by an elementary school. But initially, precedent is just clear. You don't have a due process claim unless something has been denied. Correct. What is denied? A property right. And then you have Maryland law. Maryland decisions are clear on the point. And a helping hand is clear on the point. That you have to have a building permit in hand to have a property right. And you have to have begun construction. And here there was not even an application for a building permit. And that's correct, Your Honor. That's why it's not even a close call. And that's why Judge Titus had no trouble disposing of the substantive due process claim. The Gardner case that appellants rely upon is no different than rock, field, fuel, and feed. This court held in Gardner that in order to have a property right, the municipality has to lack every conceivable amount of discretion possible. And the court said if the municipality has any level of discretion, then you have no property right that is protected by substantive due process. So the trial court properly dispensed with the substantive due process claim. Counsel keeps saying that they were targeted. But counsel is ignoring the fact that the circuit court for Montgomery County, the court of special appeals, and the district court all have reached the conclusion that this was general legislation. This applied to anyone who was within a property line of 250 feet from a school. It didn't just apply to Siena. It applied to everyone. And the appellants have to live with that. This is not MLC. This is not a factor test that involves a rezoning of a particular piece of property. This is general legislation. And as the Supreme Court held in Heller, it's a different analysis. There's no fact-finding which the appellants are encouraging this court to entertain on general legislation. And as Judge Titus alluded to, what a chilling effect it would have on local municipalities if every time they pass a piece of legislation, a zoning piece of zoning legislation, they have to then justify through a fact-finding process exactly how they reached the empirical decision they did. But it would bring government to a halt. The bottom line is this is a case under the Equal Protection Clause. It is rational basis. And the reality is that setbacks are a simple form of setting buffers between various uses. And unless the panel has any questions, I will submit. All right. Thank you. We have no further questions. Thank you. Mr. Kasdan, you have rebuttal time. Thank you, Your Honor. Very, very briefly, Rockville Fuel is clear that there are two concepts. There's a vested right and there's a property interest. And I would urge the court to read that case carefully. There was no vested right there, but the court went on to determine whether or not there was a violation of due process because there was a property interest. With regard to Gardner, that case supports us in terms of the test. But what was persuasive to the Gardner panel at the time was that the planning commission's final approval was 25 years out from the time that the developers came back. And there was a dormancy that was persuasive to the court that said, well, you don't even have a proper planning approval at the end of the day. That's not our situation over here. We do have final site plan approval. If we didn't have final site plan approval, then the document that we received would not have said that's appealable. We need a final decision for that. This is something that does not happen every day. We're entitled to be able to apply the MLC three-prong test. There would not be any children. Since you sat down, I've looked at the MLC opinion, and you call it a three-prong test. Those are just some factors that could be taken into account. But the test the court announced is, and in the context of a zoning action involving property, it must be clear that the state's action has no foundation in reason and is mere arbitrary or irrational exercise of power, having no substantial relation to the public health, the public morals, public safety, or the public welfare in its proper sense. That's correct, Your Honor. So it seems to me no foundation in reason and no relationship to safety. Well, they announced their reasons. They were worried about traffic and safety. They may be wrong, but that was what they announced and talked about. What is a substantial relationship test, then, Your Honor? It's a rational relationship test because the language in Sylvia development is arbitrary and capricious. The substantial relationship is the test, and that's based on a helping hand, and that's what MLC was citing. And the MLC court cites to Sylvia and distinguishes that, and that's why we're relying on MLC, which is a case that was cited many, many years after Sylvia. And as I said before, Sylvia, I believe, went to trial. I thought these citizens in this case complained about traffic and safety and crime. Weren't those the three things they complained about? No. Aesthetics. Aesthetics. They also made disparaging remarks about the developer, and that's comparable to what happened in MLC. I understand, but I'm pointing out that the citizen concern was traffic, safety, crime, and aesthetics. And it seems to me that whatever the councilman took into account, those clearly are considerations that are legitimate legislative considerations. We claim that those were pretextual, and we have evidence to that effect. And the MLC case looked at the comments of the citizens and determined whether or not- Pretextual? That's just saying you disagree. Well, that's what a reasonable trier of fact at the end- No, the reasonable trier of fact is the city council. It's not the federal court. The courts are the ones that have to show- That's what they weigh. That's what they're for, to examine empirical evidence, to examine citizen complaints. And it's our contention that they were unduly influenced, just like the council in MLC was unduly influenced by these considerations. There's nothing wrong with them being influenced by the citizens' comments, as long as ultimately they use that information to take action within the scope of their authority to engage in legislative acts pertaining to zoning. There's nothing wrong with getting information from- There's nothing wrong with getting information, Your Honor. No question about that. Actually, we've had cases where there was extensive testimony by citizens on various things like that. Ones I recall are these towers, telephone towers, and citizens come in and make their statements. Many of them make very legitimate statements. Others make statements totally off the wall that shouldn't be considered. But the zoning authority then votes, and they measure the public's sense and their acceptance in legislating for the community. And I'm not sure the fact that somebody makes a disparaging remark about a developer eliminates the comments of other citizens that complain about traffic and complain about safety and complain about aesthetics and crime. It seems to me that you make these presentations to a legislative body, and they vote. And in this case, the vote is closed. Your Honor, in this instance, it was the same activist making the same arguments from the two sides of their mouth, and that shows pretext. And with respect to what we're influencing- I did not follow that. What shows pretext? What I'm saying is, Your Honor, that the same people who complained about traffic and safety problems also in e-mail correspondence admitted that there were no safety in traffic. How many complaints or comments were there in this case? I can't say exactly, Your Honor. More than three or four? By the same people, Your Honor. No, how many different people I'm talking about? I think there were five activists, Your Honor. I think that we mentioned unsued activists, about five people, if I'm not mistaken. But we had their correspondence, and we showed that there was pretext in what they were arguing. And they were just out to get Siena in this instance. And we show also we have correspondence from the council members admitting to basically that, that we don't like Siena, we're not going to meet with them, I'm sick of Siena. And there was an influence, just in the same manner that there was an influence improperly in MLC Automotive. And as a consequence, we should be able to go. It's just what you see all the time, which is a robust political fight. These land use decisions are touchy, they've set off very strong emotions, and that's the name of the game. And you have a robust political fight, and I've sat in on those city council meetings a lot of times, and passions get inflamed, and people accuse each other of being untruthful, and pretext is a polite word for what they're accused of. Well, Your Honor, that's precisely what we're entitled to show based on the MLC factors. I would just add one last thing. We have count one, which argues that they violated the city code. Maybe it's a technicality, but they violated it in the sense that they did not bring the revised ETA, which is on the books now, to the planning commission properly, and that was not the subject of a public hearing. And Judge Titus never ruled on that. So at the end of the day, Your Honor, we would ask that the case be remanded, certainly with respect to the state claims, and we'll go from there. All right, thank you. Thank you, Your Honor. Just what is your response on the public hearing? In the brief or supplement, there was a notice of a public hearing that contained notice of the text amendment just as it was adopted, and it went out before the hearing. The public notice, you know what I'm referring to? Yes, I do, Your Honor. Okay. Wasn't that notice to the public? I believe that the subject matter at the hearing itself was the original CTA under which we believe we would qualify because for more than two and a half years. I'm asking about the notice. I believe it was a notice. Yeah, and the notice contained a notice about considering a text amendment that was the same as they adopted. At worst, that goes to the public hearing, Your Honor. Is that right? I believe so. Okay. I just wanted to. But with respect to the planning commission, that's not. You said that no one had a chance. There was no hearing, no notice, no hearing on that form. What was discussed and presented at the public hearing was the original CTA, not the revised CTA. That's a question of fact that has to be decided at the end of the day. I've taken a lot of your time, so if you have anything else to say. No, Your Honor. Thank you very much. Okay, thank you. We will adjourn court and come down to council. This House report stands adjourned until tomorrow morning. God save the United States. This House report.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Raymond A. Jackson